RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0200p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

T'SHAUN OMAR JONES,

*Defendant-Appellant*.

⎤
⎟
⎟
⎟
⎬  Nos. 22-1280/1281
⎟
⎟
⎟
⎦

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 19-cr-202362 (22-1281)—George Caram Steeh, III, District Judge;
No. 21-cr-20435 (22-1280)—Gershwin A. Drain, District Judge.

Argued:  April 27, 2023

Decided and Filed:  August 29, 2023

Before: COOK, GRIFFIN, and NALBANDIAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Amanda Bashi, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellant in case 22-1280.  Mark Chasteen, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee in case 22-1280.  **ON BRIEF:** Benton C. Martin, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellant in case 22-1280.  Mark Chasteen, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee in case 22-1280.  Meghan Sweeney Bean, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee in case 22-1281.

———————————

**OPINION**

———————————

NALBANDIAN, Circuit Judge.  Officers arrested T'Shaun Jones, who had been on supervised release, after he fired shots outside his house and fled inside.  Under a plea agreement, the district court imposed the agreed-upon ten-year sentence, which was above the Guidelines range.  Separately, Jones faced resentencing on his supervised release because the firearm offense violated his supervised-release conditions.  A different district court imposed a 24-month sentence for this violation—half to run concurrently with his firearm conviction and half to run consecutively.

Jones challenges both the ten-year firearm sentence and the 24-month supervised-release sentence.  Because the district courts properly calculated Jones's Guidelines range for the firearm offense and imposed a reasonable sentence for the supervised-release violation, we AFFIRM.

**I.**

**A.**

On May 18, 2021, Detroit police responded to a shots-fired call.  Witnesses reported that T'Shaun Jones had been firing a gun outside his home all day.  Police saw Jones fire one shot in front of his home before he ran inside.  And Jones refused to step outside.  So police declared a barricaded gunman situation.  But Jones eventually came out of the house, and the officers arrested him.

A grand jury indicted Jones on a single count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e).  The government and Jones negotiated a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C),[1] and Jones pleaded guilty to

_____

[1]In a plea agreement under Rule 11(c)(1)(C), "the Government and a defendant 'agree that a specific sentence or sentencing range is the appropriate disposition of the case.'"  *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018) (quoting Fed. R. Crim. P. 11(c)(1)(C)).  "In deciding whether to accept an agreement that includes a specific sentence, the district court must consider the Sentencing Guidelines."  *Id.*  In other words, "[a] sentence imposed pursuant to a Type-C agreement is no exception to the general rule that a defendant's Guidelines range is both the starting point and a basis for his ultimate sentence."  *Id.* at 1776.  So here, for example, Jones's plea

possessing a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). Both parties agreed that Jones should receive a ten-year sentence, well below the 15-year mandatory minimum that would have applied if he had been classified as an armed career criminal. And Jones "waive[d] any right" to appeal his sentence, so long as it "[did] not exceed the top of the guideline range determined by the Court." (22-1280, R. 22, Plea Agreement, p. 12.)

The presentence report ("PSR") calculated Jones's base offense level at 20, reflecting that Jones had committed a firearm offense after committing a controlled substance offense. That's because Jones had been previously convicted of manufacturing or delivering a controlled substance under Michigan Compiled Laws § 333.7401.

And the PSR also recommended a two-point increase because Jones "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." (22-1280, R. 32, Revised PSR, p. 7.) In all, the PSR calculated Jones's criminal history score at 14, his criminal history category as VI, and a recommended Guidelines range of 77 to 96 months.

At sentencing, Jones objected to the PSR on two grounds. First, he argued that he should not receive a sentence enhancement for reckless endangerment during flight. But the district court rejected this argument. Second, Jones objected to the use of his prior controlled substance offense under Michigan state law to increase his base offense level. Citing opinions by two district courts, he argued that the definitions of the Controlled Substances Act determine whether a state offense can count as a controlled substance offense under the Guidelines. And he claimed that because Michigan's controlled-substance statute is broader than the federal definition of the relevant substances under the Controlled Substances Act, it couldn't count toward an enhancement. The district court disagreed and applied the enhancement. (22-1280, R. 36, Sentencing Transcript, p. 9.)

---

agreement required the district court to "determine the defendant's guideline range at sentencing." (22-1280, R. 22, Plea Agreement, p. 5.) And that's why the Guidelines matter even though the parties stipulated to a ten-year sentence.

In the end, the district court recognized the PSR's calculation of the Guidelines range but still sentenced Jones to 120 months in prison based on the plea agreement. Jones timely appealed.

**B.**

Complicating his case, Jones was on supervised release for attempted transporting of an individual to engage in prostitution when he committed his firearm offense. Among the conditions of Jones's release were that he could not commit another crime; that he could not own, possess, or have access to a firearm; and that he had to notify his probation officer if he were arrested or questioned by a law enforcement officer. Jones's probation officer found that he had violated all three conditions by committing the firearm offense.

At his separate supervised-release sentencing, before a different judge, Jones requested that the court impose a concurrent sentence, while the government requested an 18-month consecutive sentence.[2]

In determining the appropriate sentence, the district court noted that, together with the Guidelines range, it had to consider the 18 U.S.C. § 3553(a) factors, including "the nature and circumstances of the offense, the history and characteristics of the defendant and the need to avoid unwarranted sentencing disparities among similarly situated defendants." (22-1281, R. 23, Sentencing Transcript, p. 12–13.) The court said that Jones's firearm offense was "serious." (*Id.* at 13.) It noted that while the supervised-release violation was "related to the underlying offense," it was "a violation in its own right," and an appropriate sentence must account "for th[at] breach of trust." (*Id.* at 14.) So the court found that "the advisory range [wa]s an appropriate measure of the seriousness of the offense." (*Id.*)

The court considered mitigating circumstances, including that Jones's prior offenses had resulted in relatively low sentences, and noted that the longest sentence Jones had ever received

---

[2]Jones's plea agreement for the firearm offense specified that he could request that his 120-month sentence "run concurrently with any term of imprisonment imposed for the violation of his supervised release." (22-1280, R. 22, Plea Agreement, p. 8.) But he "underst[ood]" that the court might nonetheless order that his term of imprisonment for the supervised-release violation run "concurrently or consecutively with the term of imprisonment imposed in [the firearm] case." (*Id.*)

was 27 months.   So, in the district court's view, Jones's new 120-month, above-Guidelines sentence was "a pretty big jump." (*Id.* at 14.)  The court then imposed a 24-month sentence, half of which would be served consecutively to the firearm offense and half of which would be served concurrently.

Jones objected, arguing that "it would have been reasonable to impose fully concurrent sentences" and objected "to any consideration of the seriousness of the offense in imposing the sentence." (*Id*. at 17.)  The court allowed the objection to stand but thought that it "made it clear that the seriousness of the offense was the violation itself." (*Id.*)  Jones timely appealed.

**II.**

First, we'll consider whether the district court erred in enhancing Jones's base level offense for a "controlled substance offense" using his prior drug conviction under Michigan state law.   Second, we'll consider whether the district court erred in applying an enhancement for reckless endangerment during flight.

**A.**

We review a district court's "legal interpretation of the Guidelines de novo and its factual findings" for clear error. *United States v. Byrd*, 689 F.3d 636, 639 (6th Cir. 2012) (citing *United States v. Stubblefield*, 682 F.3d 502, 510 (6th Cir. 2012)).   And "[w]hether a prior conviction counts as a predicate offense under the Guidelines is a question of law subject to de novo review." *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc) (per curiam).

**B.**

We first consider whether the district court erred in considering Jones's prior conviction under Michigan Compiled Law § 333.7401.   The PSR calculated Jones's base offense level under U.S.S.G. § 2K2.1.  Under that provision, a defendant receives a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."  § 2K2.1(a)(4)(A).

A "controlled substance offense" is

an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

Jones's argument proceeds in two steps. First, he argues that the Guidelines definition of a "controlled substance offense" is limited to substances criminalized under the Controlled Substances Act, and that the court cannot look to state law to apply the enhancement.[3] Second, he argues that Michigan's controlled substance statute is broader than the Controlled Substances Act, so his prior Michigan conviction cannot be used as a predicate offense.[4] Because we disagree with him at the first step, we need not reach the second.

We first consider whether the Guidelines allow us to use state law to define a controlled substance offense. "In construing the Guidelines, we employ the traditional tools of statutory interpretation, beginning with the text's plain meaning." *United States v. Babcock*, 753 F.3d 587, 591 (6th Cir. 2014). "[I]f the language is unambiguous," the inquiry "ends there." *Perez v. Postal Police Officers Ass'n*, 736 F.3d 736, 740 (6th Cir. 2013). And in evaluating text, "we discover a statute's plain meaning by looking at the language and design of the statute as a whole." *Id.* at 741 (cleaned up). Only "[i]f the text alone does not admit a single conclusive answer" do we "draw on a broader range of interpretive tools." *Id.* at 740.

We start with the plain language of § 4B1.2(b). It defines a "controlled substance offense" as an "offense under federal or *state law*, punishable by imprisonment for a term

---

[3]We have rejected this argument in unpublished caselaw, *see, e.g.*, *United States v. Smith*, 681 F. App'x 483, 489 (6th Cir. 2017), but we take this opportunity to address the argument in greater depth now.

[4]To determine whether a state offense can be a predicate controlled substance offense under the Guidelines, we use the categorical approach. *United States v. Montanez*, 442 F.3d 485, 489, 491 (6th Cir. 2006). That means we look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990). So we "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood. The prior conviction qualifies as [a] predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S. 254, 257 (2013).

exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." § 4B1.2(b) (emphasis added).

From the start, there's some circularity here because a "controlled substance offense" is defined as an "offense . . . that prohibits . . . a controlled substance." *Id.* And the question is whether an offense that prohibits a controlled substance must prohibit a federally controlled substance under the Controlled Substances Act to qualify, given that the plain language of § 4B1.2(b) incorporates both state and federal law into its definition.

To tackle that question, we'll start with what we know from § 4B1.2(b) about a "controlled substance offense": (1) it may be *under* either state law or federal law; (2) the offense must carry a sentence above one year; and (3) the offense must prohibit "the manufacture, import, export, distribution, or dispensing" of a controlled or counterfeit substance or possession with the intent to do so. *Id.* The Guidelines don't define "controlled substance," so we look to its ordinary meaning: "a drug regulated by law." *United States v. Lewis*, 58 F.4th 764, 769 (3d Cir. 2023).

Bottom line, whether the "offense" is a state-law offense or a federal offense, it must carry a particular term of imprisonment and it must prohibit certain activity involving a drug regulated by law. And the "controlled substance offense" may be a violation "under" state law.

What we don't see in the text is an imperative that the Controlled Substances Act serve as the referent for what state-law provisions can qualify as controlled substance offenses. In fact, we see § 4B1.2(b) referencing "offense[s]" *under* "state law" in defining controlled substance offenses.

And if the definition of "controlled substance offense" only referred to federal law, we'd expect to see a reference to the Controlled Substances Act. When the Guidelines require uniformity, the text of the Guidelines confirms that's the case. For instance, U.S.S.G. § 2D1.1, which sets the offense level for drug-related offenses, includes "explicit references to federal statutes and other federal Guidelines provisions." *United States v. Ward*, 972 F.3d 364, 373 (4th

Cir. 2020) (citing § 2D1.1(a), (b)(3), (b)(16), (b)(18), (d)(1)). And even § 4B1.2 itself refers to federal law, 26 U.S.C. § 5845(a), in defining "crime of violence." But § 4B1.2(b) doesn't do the same for controlled substance offenses.

Instead, § 4B1.2(b) incorporates both state and federal law into a "controlled substance offense" analysis. So the context of the Guidelines confirms what the text suggests—state-law controlled substance offenses need not define controlled substances according to the Controlled Substances Act to count under § 4B1.2(b). *See United States v. Fitzgerald*, 906 F.3d 437, 442 (6th Cir. 2018) (explaining that "[i]f a word in isolation is susceptible of multiple meanings," we "work outward and examine . . . its placement and purpose in the statutory scheme" (cleaned up)).

In short, we see no textual limit that a controlled substance offense must contain a substance listed in the Controlled Substances Act, and we decline to add such a requirement here. *See Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 246 (6th Cir. 2004) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face." (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997))).

So, in line with our unpublished decisions, we hold that a state-law controlled substance offense can be used to calculate the base offense level under § 2K2.1(a)(4)(A), even if it defines a controlled substance differently from the Controlled Substances Act. *See United States v. Smith*, 681 F. App'x 483, 489 (6th Cir. 2017) ("Because there is no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government, and because the Guidelines specifically include offenses under state law in § 4B1.2, the fact that [a state] may have criminalized . . . some substances that are not criminalized under federal law does not prevent conduct prohibited under the [state] statute from qualifying, categorically, as a predicate offense."); *United States v. Sheffey*, 818 F. App'x 513, 519–20 (6th Cir. 2020) (same); *cf. United States v. Whitfield*, 726 F. App'x 373, 376 (6th Cir. 2018) ("[T]he States possess primary authority for defining and enforcing the criminal law." (cleaned up)).[5]

---

[5]Today, we take one side of a circuit split. Using a textual analysis, the Third, Fourth, Seventh, Eighth, and Tenth Circuits have held that courts may consider state-law controlled substance offenses under § 2K2.1(a)(4)(A).

Jones argues that a federal-law-only approach is necessary to ensure that the Guidelines are interpreted uniformly. (22-1280, Appellant Br., p. 12–16.) But his argument asks us to ignore text for the broader goal of uniformity. We decline to do so and go with the text of the Guidelines. *See United States v. Ruth*, 966 F.3d 642, 654 (7th Cir. 2020) ("Congress was well aware of the significant variations that existed in state criminal law." (quoting *Whitfield*, 726 F. App'x at 376)).

In sum, because a "controlled substance offense" under U.S.S.G. § 4B1.2(b) includes crimes committed under state law and Jones makes no other argument that his state conviction doesn't meet the standard of "controlled substance offense" under § 4B1.2(b), we decline to disturb the district court's application of this enhancement.[6]

## C.

Jones next argues that the court erred in applying a sentencing enhancement for reckless endangerment during flight. We "review the district court's factfinding for clear error" and give

*See Lewis*, 58 F.4th at 769–71; *Ward*, 972 F.3d at 371–74; *United States v. Ruth*, 966 F.3d 642, 651–54 (7th Cir. 2020); *United States v. Henderson*, 11 F.4th 713, 718–19 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 1696 (2022); *United States v. Jones*, 15 F.4th 1288, 1291–96 (10th Cir. 2021).

On the other side of the ledger, the Second, Fifth, and Ninth Circuits have only defined controlled substances according to the Controlled Substances Act, refusing to look at state law in that determination. *See United States v. Townsend*, 897 F.3d 66, 68, 71 (2d Cir. 2018); *United States v. Gomez-Alvarez*, 781 F.3d 787, 793–94 (5th Cir. 2015) (encountering a different Guidelines provision but only looking to federal law to define "controlled substance"); *United States v. Bautista*, 989 F.3d 698, 702–04 (9th Cir. 2021). It's worth noting that these circuits employ either a presumption that "the application of a federal law does not depend on state law unless Congress plainly indicates otherwise," *see Townsend*, 897 F.3d at 71 (citing *Jerome v. United States*, 318 U.S. 101, 104 (1943)), or turn to the "stated goals of both the Guidelines and the categorical approach," *Bautista*, 989 F.3d at 702; *Gomez-Alvarez*, 781 F.3d at 793–94 (adopting the reasoning of a Ninth Circuit case that looked to the broad "vision" of uniformity). But there's no need to apply this presumption or turn to broad "goals" because the text of the Guidelines is clear—and it incorporates state law as an avenue for controlled substance offenses. *See Perez*, 736 F.3d at 741 (explaining that only "if the text alone does not admit a single conclusive answer," do we "draw on a broader range of interpretive tools").

[6]Jones argues in the alternative that the rule of lenity should apply. (22-1280, Reply Br., p. 15–16.) Jones did not raise this issue in his opening brief, despite discussing the construction of § 4B1.2(b). "We have consistently held . . . that arguments made to us for the first time in a reply brief are waived." *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010). And, though the rule of lenity applies to interpretation of the Guidelines, *United States v. Henry*, 819 F.3d 856, 871 (6th Cir. 2016), it doesn't have a place here. "[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *United States v. Castleman*, 572 U.S. 157, 172–73 (2014) (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)). Because the structure and plain meaning of the text establish that the court may consider state law in determining predicate offenses under § 4B1.2(b), there is no "grievous ambiguity." *Id.*

"due deference" to a district court's application of the Guidelines to the facts. *United States v. Wallace*, 51 F.4th 177, 183 (6th Cir. 2022) (citation omitted).

The Guidelines provide for a two-level enhancement where "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. For this provision to apply, the government had to show that Jones

> (1) recklessly, (2) created a substantial risk of death or serious bodily injury, (3) to another person, (4) in the course of fleeing from a law enforcement officer, (5) and that this conduct occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

*United States v. Mukes*, 980 F.3d 526, 536 (6th Cir. 2020) (quoting *United States v. Dial*, 524 F.3d 783, 786–87 (6th Cir. 2008)). And the government had to "link a specific aspect of the flight with a specific risk." *Id.* (cleaned up).

A defendant who "draw[s] a gun in front of officers," and in doing so "provoke[s] a substantial risk that officers would open fire and perhaps injure other officers or bystanders" would be subject to the enhancement. *United States v. Brooks*, 763 F. App'x 434, 440 (6th Cir. 2019) (explaining that this enhancement applies even when officers don't "know whether a firearm is loaded or unloaded" because "pulling out any firearm in view of police officers while in flight creates a risk that officers might fire their weapons" (citing *United States v. Tasaki*, 510 F. App'x 441, 444–45 (6th Cir. 2013)).

Here, witnesses reported that Jones had been shooting in the air outside his home all day. Police observed Jones fire one shot in front of his residence before he fled inside. Jones remained in the residence with two other individuals and refused to come out. At sentencing, the government argued that based on this conduct, Jones "created a substantial risk to everyone involved," including Jones, "the officers involved, and the people inside the residence and outside." (22-1280, R. 36, Sentencing Transcript, p. 6.) The district court agreed and applied the enhancement. And under our caselaw, the district court didn't abuse its discretion in doing so. Jones's actions created a "substantial risk" that officers would fire and "injure" innocent bystanders. *Brooks*, 763 F. App'x at 440.

At sentencing and now before us, Jones points to *United States v. Fields*, 210 F.3d 386 (9th Cir. 2000) (unpublished table decision), for the proposition that, even when a defendant barricades himself in a residence with other people, he should not receive a reckless endangerment enhancement.  The district court disagreed.  And Jones argues that this was error. (22-1280, Appellant Br., p. 29.)

*Fields* didn't bind the district court, and it doesn't bind us either.  Under our caselaw, the facts of this case warranted the enhancement.  Importantly, even considering *Fields*, our case is distinguishable on the facts.  In *Fields*, the district court had "attribut[ed] others' conduct to [the] defendants," rather than look at the defendants' conduct alone in determining whether the enhancement should apply.  *See* 210 F.3d at *4.  And the PSR in *Fields* "fail[ed] to attribute any wrongful conduct regarding the actual flight to either defendant."  *Id.*  But Jones's PSR established that he fired a shot in front of the officers before fleeing into his home and creating a barricaded gunman situation.  So unlike in *Fields*, the facts establish that Jones's own actions created a risk that officers would open fire in pursuit, putting Jones, the officers, and bystanders at risk of death or serious bodily harm.

In all, the district court did not err in finding that Jones recklessly created a risk of serious bodily harm during his flight from police.

**III.**

We next turn to Jones's challenges to his sentence for violating his supervised release. He argues that the district court imposed a procedurally and substantively unreasonable two-year sentence, with half to be served consecutively and half to be served concurrently to his ten-year firearm sentence.  Where a defendant properly objects below, we review claims of procedural and substantive unreasonableness for an abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).

**A.**

We first review the procedural reasonableness of Jones's sentence.  Jones properly objected, so we review this argument for abuse of discretion.  *Id.*  From the start, it's Jones's

burden to establish that the district court imposed a procedurally unreasonable sentence. *United States v. Sands*, 4 F.4th 417, 420 (6th Cir. 2021).

And, in determining whether he has met that burden, we evaluate whether the district court

> (1) properly calculated the applicable advisory Guidelines range; (2) considered the other [18 U.S.C.] § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.

*United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017) (alteration in original) (quoting *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007)).

A district court may revoke a defendant's supervised release "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(e). Section 3553(a)(2)(A), which requires the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," is not included as one of the considerations of § 3583(e). Still, courts may, but are not required to, consider § 3553(a)(2)(A) during sentencing for a supervised-release violation. *See United States v. Lewis*, 498 F.3d 393, 399–400 (6th Cir. 2007).

Jones argues that his sentence was procedurally unreasonable because the district court treated the seriousness of his offense under § 3553(a)(2)(A) as a mandatory factor in a supervised-release resentencing, even though that factor is only discretionary.

In coming up with the appropriate sentence for Jones, the court said that it would "consider the relevant factors set out by Congress in [18 U.S.C. §] 3553(a) . . . . This includes considering the need for a sentence to promote respect for the law, deter criminal conduct, protect the public from future crimes to be committed by the defendant, and promote rehabilitation." (22-1281, R. 23, Sentencing Transcript, p. 13.) And the court observed that it "[wa]s also to consider the nature and circumstances of the offense," which it said were "serious." (*Id.*)

Jones argues that these statements reflect that the court thought it had to consider § 3553(a)(2)(A) in imposing its sentence—even though consideration of that factor is discretionary. (22-1281, Reply Br., p. 1.) We disagree. At no point did the court say that it was required to consider § 3553(a)(2)(A). Instead, it considered the seriousness of the firearm offense and the underlying prostitution offense with the other § 3553(a) factors enumerated in 18 U.S.C. § 3583(e), which it was allowed do. So Jones hasn't met his burden to show that the district court abused its discretion. *Lewis*, 498 F.3d at 399–400.[7] And with that, Jones hasn't demonstrated that his sentence was procedurally unreasonable.

**B.**

Finally, Jones argues that his two-year sentence for the violation of his supervised release was substantively unreasonable. We give a within-Guidelines sentence a rebuttable presumption of reasonableness and review for an abuse of discretion. *United States v. Adams*, 873 F.3d 512, 520 (6th Cir. 2017). Substantive reasonableness focuses on whether a "sentence is too long (if a defendant appeals) or too short (if the government appeals)." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). "It's a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Id.*

The court calculated Jones's Guidelines range as 18 to 24 months. Jones requested that the court apply the sentence concurrently to his sentence for the firearm violation, while the government requested that it impose an 18-month consecutive sentence. The court chose to impose a 24-month sentence, half of which would be served consecutively and half of which would be served concurrently. And this was more favorable to Jones than the Guidelines recommendation. U.S.S.G. § 7B1.3(f) ("Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving . . . .").

---

[7]The government seems to argue that Jones has no viable argument about § 3553(a)(2)(A) because in its view that provision only applies to the underlying prostitution offense, and, according to the government, the district court didn't discuss the prostitution offense in determining the seriousness of the offense. (22-1281, Appellee Br., p. 18.) But the government's view is incorrect because the district court did consider the prostitution offense, as it was allowed to do under § 3553(a)(2)(A). *United States v. Johnson*, 640 F.3d 195, 204 (6th Cir. 2011). Even so, the district court also properly considered the firearm offense—the violation conduct—when it sanctioned Jones's "breach of trust." *United States v. Morris*, 71 F.4th 475, 482 (6th Cir. 2023).

Jones argues that his sentence was substantively unreasonable because the court placed too much weight on the seriousness of the offense. Citing Third Circuit precedent, Jones argues that even if the consideration of the seriousness of the offense is not "*per se* unreasonable," the court may err in placing "undue weight" on that factor. (22-1281, Appellant Br., p. 16–17 (citing *United States v. Young*, 634 F.3d 233, 241 (3d Cir. 2011).)

The court did not place undue weight on the seriousness of Jones's offense. The court "consider[ed] the relevant factors set out by Congress in [18 U.S.C. §] 3553(a) . . . [including but not limited to] the need for a sentence to promote respect for the law, deter criminal conduct, protect the public from future crimes to be committed by the defendant, and promote rehabilitation." (22-1281, R. 23, Sentencing Transcript, p. 13.) And the court noted that, together, with the Guidelines, it had to consider "the nature and circumstances of the offense, the history and characteristics of the defendant and the need to avoid unwarranted sentencing disparities among similarly situated defendants." (*Id*. at 12–13.) Further, it considered Jones's criminal history as a mitigating factor. (*Id*. at 14.)[8] Although it discussed the seriousness of Jones's offense, nothing in the record suggests that it gave sole or undue weight to that factor.

Because the court adequately weighed the § 3553(a) factors in imposing a within-Guidelines sentence, his sentence was not substantively unreasonable.

## IV.

For these reasons, we affirm.

---

[8]Jones argues that the court erred in not considering the recent death of his child's mother and his fear that his child would end up in foster care. (22-1281, Appellant Br., p. 17.) But we have found that a court's failure to explicitly address a particular mitigation argument isn't enough to make a sentence unreasonable, especially when the court considers other factors at length. *United States v. Sogan*, 388 F. App'x 521, 524 (6th Cir. 2010) (per curiam) (citing *United States v. Berry*, 565 F.3d 332, 340–41 (6th Cir. 2009)).