NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0530n.06

Case No. 22-3984

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>DAVID SCOTT MCCULLOUGH,<br><br>Defendant – Appellant. | ) ) ) ) ) ) ) ) ) ) ) | **FILED**<br>Dec 18, 2023<br>KELLY L. STEPHENS, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO<br><br>OPINION |

Before: SILER, NALBANDIAN, and DAVIS, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Two men tried to force their way into David McCullough's residence. McCullough fought back with a handgun, killing one of the men and prompting the other man to flee. But McCullough then left his residence and shot and killed the second man. After McCullough pleaded guilty to being a felon in possession of ammunition, the district court applied a Guidelines enhancement because McCullough possessed ammunition in connection with the crime of manslaughter. We affirm. Under Ohio law, McCullough did not act in self-defense when he killed the second intruder because McCullough reengaged the intruder in violation of his duty to retreat.

**I.**

On the night of November 17, 2019, Stephen Turner and Jerry McGee came to the front door of McCullough's duplex in Toledo to burglarize his home. McGee was armed and Turner

was wearing a mask and gloves. McCullough lived in the upper unit, but a stairwell led down to his separate front door. The door had a lock and deadbolt. When McCullough opened that door, Turner tried to force his way in. McCullough shot Turner in the head, killing him. McGee fled to the right (from McCullough's perspective) toward a getaway car.

As the attempted invasion ended, McCullough closed and reopened his door. McCullough shot from the doorway a few seconds later, presumably at McGee. About five seconds later, McCullough left his duplex, closed the door behind him, and walked across his porch. McCullough stopped between the porch and the sidewalk and fired multiple shots as the getaway car drove past, leaving McGee behind. McCullough then fired to his right in McGee's direction. As he fired, McCullough turned to his left and started to run down the sidewalk away from McGee.

McGee died. Police and paramedics later found him in the roadway with a firearm near him. McGee was shot twice, first in his lower right back and then behind his right ear. The head wound killed McGee and, unlike the back wound, incapacitated him immediately. So McCullough killed McGee after he left his duplex, not when he fired the first shot from the doorway. The police found a spent shell casing near McGee, indicating that McGee fired at least once.

McCullough was not charged by the state of Ohio for murder or voluntary manslaughter. But a federal grand jury charged McCullough with being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). McCullough pleaded guilty. Before sentencing, the district court held an evidentiary hearing on whether it should apply the U.S.S.G. § 2K2.1(c)(1)(B) cross-reference for possessing ammunition in connection with another offense. The government asked the court to cross-reference the murder or manslaughter Guidelines offense level based on McGee's death, but McCullough argued that the cross-references were not appropriate because he acted in self-defense. The district court sided with the government, finding

2

that voluntary manslaughter, under U.S.S.G. § 2A1.3, was the appropriate cross-reference offense. The cross-reference resulted in a heightened offense level and a Guidelines range of 110 to 120 months. The district court imposed a sentence of 110 months' imprisonment followed by three years of supervised release. McCullough timely appealed.

## II.

McCullough challenges the court's Guidelines calculation, specifically the court's finding that he possessed ammunition in connection with the crime of manslaughter. Under Appendix A of the Guidelines Manual, a violation of 18 U.S.C. § 922(g)(1) falls under U.S.S.G. § 2K2.1. That provision directs judges to "the most analogous offense guideline" relating to homicide if the defendant possessed ammunition in connection with the commission of another offense that resulted in death. U.S.S.G. § 2K2.1(c)(1). The issue is whether the district court should have applied U.S.S.G. § 2A1.3, the provision for voluntary manslaughter, as "the most analogous offense guideline."

This court's role is not to decide the "optimal sentencing outcome" but rather to determine whether the elements of Ohio voluntary manslaughter were proven by a preponderance of the evidence. *United States v. Woodley*, 727 F. App'x 136, 141–42 (6th Cir. 2018).[1] We review the district court's findings of fact for clear error. *United States v. Jones*, 81 F.4th 591, 600 (6th Cir. 2023). And we give due deference to the district court's application of § 2K2.1(c) to the facts. *United States v. Wallace*, 51 F.4th 177, 183 (6th Cir. 2022).

---

[1] U.S.S.G. § 2K2.1(c)(1) only requires the defendant to possess ammunition in connection with "another offense." The application notes clarify that "[a]nother offense . . . means any federal, state, or local offense . . . regardless of whether a criminal charge was brought." U.S.S.G. § 2K2.1(c)(1) comment. (n.14(C)). That interpretation is consistent with the plain language of § 2K2.1(c)(1), which does not require the offense to be a federal crime. So the manslaughter cross-reference applies if McCullough committed manslaughter under Ohio law.

McCullough argues that the district court erred in rejecting his self-defense claim.  Under Ohio law, a defendant acts in self-defense if he:

> (1) was not at fault in creating the situation giving rise to the affray; (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) did not violate any duty to retreat or avoid the danger.

*United States v. Walker*, 858 F. App'x 857, 860 (6th Cir. 2021) (quoting *State v. Warren*, No. 29455, 2020 WL 7863471, at *3 (Ohio Ct. App. Dec. 31, 2020)).  The prosecution has to disprove one of the three elements to defeat the self-defense claim.  *Id.* at 861.  Under the Guidelines, the district court must find that the defendant did not act in self-defense by a preponderance of the evidence.  *Id.* at 860.

The parties disagree about element (3), whether McCullough violated a duty to retreat or avoid the danger.  Under Ohio law in effect in 2019,[2] defendants had a "general duty to retreat before using deadly force in self-defense."  *State v. Estelle*, 176 N.E.3d 380, 391 (Ohio Ct. App. 2021).  That duty to retreat did not apply in a defendant's home or in a porch attached to such a residence.  *See id.* at 388, 391.  But the district court found that McCullough "fired the fatal shot" *after* leaving his porch.  R. 39, Mem. Op. & Order, p. 5, PageID 224.  McCullough does not argue otherwise on appeal.  So the crucial issue is whether McCullough left his home to retreat or to pursue McGee.  The district court found that McCullough did not retreat.

A defendant violates his duty to retreat if he reengages his attackers instead of remaining in the safety of his home.  *See Estelle*, 176 N.E.3d at 392.  In *Estelle*, the victim attacked Estelle around the steps of his front porch.  *See id.* at 384.  After initially retreating into his house, Estelle came back outside, walked across the front yard, and shot the victim.  *Id.* at 384–85.  There was

---

[2] Ohio later modified its self-defense law to eliminate the duty to retreat.  2020 Am. S.B. No. 175.  McCullough does not argue that the new Ohio law applies retroactively.

no evidence that the victim tried to pursue Estelle after he retreated. *Id.* at 392. The Ohio Court of Appeals denied Estelle a self-defense instruction because he left "the safety of his residence" and chose to move toward the victim. *Id.* "[E]ach step Estelle took toward [his attacker] was a step taken in violation of his duty to retreat." *Id.*

The trial court concluded that McCullough cannot claim self-defense because he also reengaged an attacker instead of retreating. The initial invasion subsided when McCullough shot Turner and McGee fled. As in *Estelle*, the district court found that "McGee was not in the process of attempting to enter McCullough's residence," R. 39, Mem. Op. & Order, p. 5, PageID 224, so McCullough could have stayed in his residence in relative safety. Instead, McCullough left his duplex, walked outside, and started shooting.

McCullough argues that he left the duplex to flee "the epicenter of danger at that moment." Appellant Br. at 12. But when he tried to flee, McCullough "remained under attack" and had to shoot back. *Id.* In other words, McCullough suggests he was running away, not pursuing anyone, and he shot and killed McGee only after McGee shot at him. If McCullough's account is correct, then McGee engaged him, not the other way around.

But the trial court found that McCullough was not retreating, and the evidence supports that finding. For a moment, McCullough was inside with his front door closed. But McCullough chose to open the door instead of staying inside. After a few seconds, McCullough fired one shot from his doorway. Then, after about another five seconds, McCullough left his home and walked across his porch, holding his handgun. After stepping off his porch, McCullough stopped and fired

multiple additional shots.  Only then did McCullough reach the sidewalk and run away, shooting as he ran.[3]

In light of all these facts, and giving the district court due deference, it did not err in rejecting McCullough's self-defense argument.  The district court rightly looked to the manslaughter Guideline.

## III.

We AFFIRM the judgment of the district court.

---

[3] McGee fired his gun at least once after McCullough had exited the residence.  But the trial court thought this did not excuse McCullough from his duty to retreat before using deadly force.  We agree.  McCullough could not leave his residence to reengage McGee even if McGee did shoot back at him.