NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0201n.06

Case No. 25-5090

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
May 04, 2026
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA, )
    Plaintiff - Appellee, )
)
v. )
)
KHARI QUNARLL SMITH, )
    Defendant - Appellant. )
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: KETHLEDGE, NALBANDIAN, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Khari Smith pled guilty to drug crimes. At sentencing, the district court applied an enhancement for maintaining a drug-involved premises, or "stash house," and sentenced Smith to 200 months in prison. Smith challenges the stash-house enhancement as well as the reasonableness of his sentence. We affirm.

**BACKGROUND**

**I.     Factual background**

In 2023, the Drug Enforcement Administration in Lexington, Kentucky began investigating Smith's brother, Khmari Smith,[1] for trafficking methamphetamine and fentanyl. Agents learned that Khmari leased two residences in Lexington, one in an apartment building on North Locust Hill Drive and one on Roosevelt Boulevard, and that Smith assisted Khmari with distributing drugs from sources in Detroit, Michigan. On one occasion, law enforcement officers saw Khmari and Smith travel from Detroit to the Roosevelt Boulevard address, leave after fifteen

---

[1] For ease of reference, we refer to Khmari Smith by his first name.

minutes, travel to the North Locust Hill Drive apartment building, and enter the building with two suitcases and two backpacks that they had retrieved from their car.

Based on these observations, agents obtained search warrants for both addresses. Their searches turned up fentanyl, cocaine, marijuana, and several firearms at the Roosevelt Boulevard address. At North Locust Hill Drive, agents found more fentanyl and firearms, as well as currency, oxycodone, methamphetamine, and drug processing equipment such as cutting agents, personal protection equipment, a press, and written instructions for mixing narcotics. They also found men's clothing in the two bedrooms.

## II.     Procedural history

Smith pled guilty to conspiring to distribute methamphetamine and fentanyl and to three additional offenses involving the possession and trafficking of methamphetamine and fentanyl. The presentence report prepared for Smith's sentencing hearing recommended that the district court apply a two-offense-level enhancement under United States Sentencing Guideline §2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance—otherwise known as a stash-house enhancement. Based on a total offense level of 36 and a criminal history category of I, the recommended imprisonment range was 188 to 235 months.

Smith objected to the stash-house enhancement, arguing that Khmari rented the two residences and that Smith did not lease, maintain, or control either of them. Smith further argued that he lived mostly in Detroit and came to Lexington only for short time periods to assist Khmari with his drug trafficking activities.

At the sentencing hearing, the district court heard testimony from DEA agent Jason Moore. Moore testified that agents saw Khmari and Smith going to the Roosevelt Boulevard and North

Locust Hill Drive addresses, and that one of the bedrooms at the North Locust Hill Drive apartment belonged to Smith. Moore also stated that officers found a drug "processing laboratory" in a closet adjacent to a common area at the North Locust Hill Drive apartment. RE 139, Sent. Hr'g Tr., PageID 767-68, 772. According to Moore, there was nothing preventing anyone in the North Locust Hill Drive apartment from accessing the drug-processing materials, nor was there any indication that Smith was unaware this processing was occurring.

The district court applied the stash-house enhancement. First, citing *United States v. Hernandez*, 721 F. App'x 479 (6th Cir. 2018), the court noted that the enhancement may apply even if a defendant does not have a legal interest in the premises at issue, so long as the government proves that he had de facto control. The court ruled that here, the government had proven de facto control and, therefore, maintenance, based on Smith's presence at the North Locust Hill Drive apartment "on a number of occasions," his awareness "that it was being utilized as a stash house," and the fact that Smith "utilized it as such with his brother." RE 139, Sent. Hr'g Tr., PageID 795-96, 754. Second, the district court noted that, under *United States v. Rich*, 14 F.4th 489 (6th Cir. 2021), it could consider the relevant conduct principles in U.S.S.G. §1B1.3(a)(1)(B) in determining whether to apply the enhancement. The court ruled that it was reasonably foreseeable to Smith that criminal activity was occurring at the North Locust Hill Drive apartment and that the residence was used in furtherance of the criminal activity.

Before deciding on a sentence, the court heard further argument. Smith highlighted his relatively young age (24 years), his lack of criminal history, and the fact that, prior to the conduct underlying the current charges, he was gainfully employed. He emphasized that he made a poor decision to traffic drugs with his brother after losing his job but did so to provide for his two young children. Smith also explained that he faced several physical and psychological health issues. And

he noted that, without the stash-house enhancement, his guidelines range would have been as low as 151 months' imprisonment. Given the calculated range of 188 to 235 months, Smith requested a sentence no greater than 188 months. For its part, the government asked for a sentence at the middle or upper end of the guideline range, due to the harm that drugs inflict on the community and the need to deter Smith from committing future offenses.

The district court considered the guidelines range, the circumstances of the offense, the need to protect the public and provide deterrence, and the need for rehabilitation. The court also considered Smith's age, family responsibilities, history and characteristics, and lack of criminal history. The court noted that the middle of the guidelines range was 211 to 212 months. From that range, the court decided to "take a year off of that and go to 200 months, based upon those mitigating factors that I have referenced," including Smith's "lack of criminal activity . . . as well as his age and family ties and responsibilities." *Id.* at PageID 812. Smith timely appealed.

**ANALYSIS**

Smith challenges the district court's application of the stash-house enhancement as well as the substantive reasonableness of his sentence. Both arguments fail.

**I.      The stash-house enhancement**

Smith argues that the district court erred in applying the stash-house enhancement. Section 2D1.1(b)(12) of the guidelines provides for a two-level enhancement for drug crimes if the defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. §2D1.1(b)(12). We have said that "the drug-house enhancement applies to anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). With respect to the "maintaining" element, which is the only element at issue in this case,

we consider "whether the defendant held a possessory interest in . . . the premises" and "the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. §2D1.1 cmt. n.17. We review "[t]he application of the maintenance prong of the drug-premises enhancement to a particular set of facts" for clear error. *United States v. Florence*, 150 F.4th 773, 782 (6th Cir. 2025).

The government bears the burden of establishing by a preponderance of the evidence that a sentencing enhancement applies. *United States v. Byrd*, 689 F.3d 636, 640 (6th Cir. 2012). Evidence of maintenance can be shown by facts showing "control, duration, acquisition of the site, renting or furnishing the site, supervising, protecting, supplying food to those at the site, and maintaining continuity." *Hernandez*, 721 F. App'x at 484 (citation modified). "Although a person need not be present at the location constantly for the enhancement to apply, the word *maintains* 'contemplates a defendant who is more than a casual visitor.'" *Id*. (quoting *United States v. Flores-Olague*, 717 F.3d 526, 532 (7th Cir. 2013)). "If a defendant does not have a legal interest in the premises, the enhancement may still apply if the government makes a sufficient showing of de facto control." *Id.* De facto control "need not be either exclusive or continuous," *United States v. Taylor*, 85 F.4th 386, 390 (6th Cir. 2023), but it requires "something more than the act of distribution from the premises," *Hernandez*, 721 F. App'x at 484.

Smith contends that the enhancement was inappropriately applied because he did not maintain either residence for drug purposes. He argues that there is no evidence that he opened, kept up, or had a possessory interest in either property, especially because he was in Detroit during portions of the conspiracy.

It is undisputed that Smith did not hold a legal or possessory interest in the North Locust Hill Drive address. But the enhancement may still apply if Smith had de facto control over the

premises. *Hernandez*, 721 F. App'x at 484-85 ("[T]he maintaining-a-premises enhancement does not come with a Statute of Frauds defense." (citation modified)); *see also Taylor*, 85 F.4th at 389-90 (stash-house enhancement applied where the defendant used a residence that was not his to distribute drugs). And on this record, the district court did not clearly err in finding that Smith exercised sufficient control over the North Locust Hill Drive residence for the enhancement to apply. The government proved by a preponderance of the evidence that Smith and Khmari jointly used the North Locust Hill Drive residence for the purpose of storing, packaging, and distributing drugs. Smith admitted to involvement in his brother's drug-trafficking activities. On one occasion, Smith and his brother went inside the Roosevelt Boulevard residence, stayed for fifteen minutes, and then traveled to the North Locust Hill Drive address and went inside, with two suitcases and two backpacks in tow. The two brothers then left North Locust Hill Drive together the next day. Later, agents found firearms and narcotics in that apartment, including drug-processing materials in a common area to which Smith had access. They also found men's clothing in both bedrooms and determined that one room was Smith's. Finally, Smith does not dispute that he stayed with his brother at that apartment, only whether he stayed "for long periods of time." CA6 R. 34, Appellant Br., at 7.

These facts are enough to sustain the enhancement. We have previously explained that the evidentiary bar for applying the stash-house enhancement is "relatively low" and that "[d]rug storage on the property and transactions on the property will usually suffice." *United States v. Terry*, 83 F.4th 1039, 1044 (6th Cir. 2023) (citation modified). We have also upheld the enhancement where the defendant stored heroin at another person's house and, like in Smith's case, agents found drug-mixing equipment there. *United States v. Bennett*, No. 22-5142, 2024 WL 966367, at *6 (6th Cir. Mar. 6, 2024). And we reached a similar conclusion in *United States*

*v. Russell*, an appeal of a conviction under 21 U.S.C. § 856(a)(1), which has an analogous "maintenance" requirement. 595 F.3d 633, 641-42, 644-45 (6th Cir. 2010). The *Russell* defendant argued that there was insufficient evidence to convict him because he did not "maintain" the address where agents found drug paraphernalia. *Id.* at 644. We rejected that argument because the defendant and his car were found at the house; "[d]rugs and products used to use, package, and sell drugs were found in nearly every room, suggesting the home was maintained for drug-related purposes"; and the defendant appeared to "kn[o]w what was going on inside" the house. *Id.* at 645.

The same reasoning applies here. Smith was known to stay at the North Locust Hill Drive apartment, and drugs and drug-mixing equipment were located inside, including in common areas to which Smith would have had access. These facts suggested that he exercised de facto control over the residence for his drug activities.

Besides, even if Smith had not maintained the North Locust Hill Drive residence, a co-conspirator's maintenance of a drug premises can support the enhancement "through the relevant conduct principles set forth in U.S.S.G. § 1B1.3(a)(1)(B)," if the maintenance of the premises was "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity[.]" *Rich*, 14 F.4th at 495 (alteration in original) (quoting U.S.S.G. §1B1.3(a)(1)(B)). Here, Smith and Khmari worked together to package drugs in the North Locust Hill Drive apartment and then distribute those drugs for sale. Smith's use of Khmari's residence was inexorably linked to their agreement to traffic drugs. *See, e.g.*, *United States v. Drew*, No. 23-3931, 2025 WL 1144831, at *8 (6th Cir. Apr. 18, 2025) (per curiam), *cert. denied*, 146 S. Ct. 341 (2025). Smith's argument that "it was not foreseeable that his lack of control over the premises would allow this enhancement

to apply," CA6 R. 34, Appellant Br., at 8, 12, misunderstands the foreseeability inquiry. The question is whether the co-conspirator's "*maintenance* of a premises" was "reasonably foreseeable . . . in connection with the [relevant criminal] activity." *Drew*, 2025 WL 1144831, at *8 (emphasis added) (citing *Rich*, 14 F.4th at 495-97). Smith has offered no reason why Khmari's maintenance of the stash house was not reasonably foreseeable to Smith as a means to facilitate their drug-trafficking activities. *See id.* ("[I]t is foreseeable that a conspiracy to sell drugs out of two houses will involve the maintenance of those houses as drug premises.").

We find no error, much less clear error, in the application of the stash-house enhancement.

## II.     Substantive reasonableness

Smith also challenges the substantive reasonableness of his sentence. "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long . . . ." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). When analyzing this type of challenge, we ask whether "the [district] court placed too much weight on some of the [18 U.S.C.] § 3553(a) factors and too little on others." *Id.* We review for abuse of discretion and presume that a sentence within the guidelines range is reasonable. *United States v. Jones*, 81 F.4th 591, 602 (6th Cir. 2023).

Smith argues that his sentence was substantively unreasonable because the district court did not properly consider the mitigating factors he identified, such as the fact that he trafficked drugs to provide for his children as well as his health issues, relative youth, and lack of prior criminal history. But the district court considered and weighed these factors, and Smith cannot rebut the presumption that his within-guidelines sentence was reasonable. In selecting a sentence toward the lower end of Smith's guideline range, the court explicitly took into consideration his age, family responsibilities, history and characteristics, and lack of criminal history. Smith essentially believes that "the district court should have balanced the § 3553(a) factors differently."

*United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). That argument is beyond our abuse-of-discretion review. *Id.*

## CONCLUSION

For these reasons, we affirm the district court's judgment.