RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0121p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

TRESSA SHERROD; JOHN CRAWFORD, JR.; JHC, IV AND
JC, minors, JOHN CRAWFORD, JR. as guardian and next
friend of JHC, IV and JC,

> *Plaintiffs-Appellants*,

*v.*

WAL-MART STORES, INC.; WAL-MART STORES EAST,
LP; WAL-MART STORE #2124,

> *Defendants-Appellees*.

No. 21-3428

────────────────

Appeal from the United States District Court for the Southern District of Ohio at Dayton.
No. 3:14-cv-00454—Walter H. Rice, District Judge.

Argued: January 16, 2024

Decided and Filed: May 29, 2024

Before: McKEAGUE, READLER, and DAVIS, Circuit Judges.

────────────────

**COUNSEL**

**ARGUED:** Warren N. Sams, III, THE SAMS LAW FIRM, Atlanta, Georgia, for Appellants.
D. Patrick Kasson, REMINGER CO., L.P.A., Columbus, Ohio, for Appellees. **ON BRIEF:**
Warren N. Sams, III, THE SAMS LAW FIRM, Atlanta, Georgia, Michael L. Wright, WRIGHT
& SCHULTE, LLC, Dayton, Ohio, Samuel L. Starks, THE COCHRAN FIRM ATLANTA,
Atlanta, Georgia, for Appellants. D. Patrick Kasson, REMINGER CO., L.P.A., Columbus,
Ohio, for Appellees.

---

**OPINION**

---

CHAD A. READLER, Circuit Judge. Police officers shot and killed John H. Crawford, III inside an Ohio Wal-Mart store. The incident prompted Crawford's estate to sue the retailer under several theories, including wrongful death. The district court granted Wal-Mart summary judgment on the wrongful death count, but denied the company summary judgment as to the others. The district court then certified its dismissal of the wrongful death cause of action for immediate appellate review under Rule 54(b) of the Federal Rules of Civil Procedure. Concluding that certification was improper, we dismiss the appeal for lack of jurisdiction.

I.

The record reveals an unfortunate and, ultimately, tragic chain of events. While visiting Wal-Mart's sporting goods department, John H. Crawford, III picked up an unpackaged Crosman MK-177 pellet gun. He then carried the pellet gun—which resembles an AR-15 assault rifle—around the store. Alarmed at the sight, a fellow customer phoned 911 to report that someone was loading and waving a weapon in the building.

Responding officers Sean Williams and David Darkow arrived at the scene. Observing Crawford with the pellet gun, Darkow commanded him to drop the weapon and get on the ground. Williams believed that Crawford was carrying a genuine assault rifle, which he was about to fire. So Williams fatally shot Crawford within seconds of Darkow's command.

Tressa Sherrod, executrix of Crawford's estate, along with members of Crawford's family, filed suit against Wal-Mart, asserting negligence, premises liability, survivorship, loss of consortium, and wrongful death. Plaintiffs asserted that Wal-Mart was at fault because the pellet gun's missing packaging included a warning against publicly displaying the gun to prevent others from mistaking it for a real firearm. They added that store employees failed to take reasonable steps to warn Crawford once they learned he was holding the pellet gun and that law enforcement was involved. Following summary judgment briefing, the district court dismissed the wrongful death count. But the others remained for trial. At plaintiffs' request, the district

court entered final judgment on the wrongful death cause of action under Rule 54(b) of the Federal Rules of Civil Procedure. Plaintiffs in turn timely appealed the grant of summary judgment on that count.

## II.

Before resolving an appeal's merits, we must first assure ourselves of our jurisdiction to do so. *T.M. ex rel. H.C. v. DeWine*, 49 F.4th 1082, 1087 (6th Cir. 2022); *see Gavitt v. Born*, 835 F.3d 623, 638 (6th Cir. 2016) ("[A]lthough the certification has not been challenged, the court must still satisfy itself that the certification was proper. Otherwise, appellate jurisdiction is lacking." (citation omitted)). That hallmark of appellate review begins and ends today's proceeding. Plaintiffs have not appealed from a final appealable order nor otherwise properly secured appellate jurisdiction.

For ages, common law courts have employed a "final judgment rule" to govern when a case becomes ripe for appeal. *See* 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3906 (3d ed. 2023); Carleton M. Crick, *The Final Judgment as a Basis for Appeal*, 41 Yale L.J. 539, 540–41 (1932). The rule instructs that "a party may not take an appeal . . . until there has been a decision by the [trial] court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (cleaned up). Federal law sets this standard by statute: appellate jurisdiction customarily extends only to review of "final decisions." *See* 28 U.S.C. § 1291. While at times frustrating to litigants, this practice carries a worthy aim—to "preserve[] the proper balance between trial and appellate courts, minimize[] the harassment and delay that would result from repeated interlocutory appeals, and promote[] the efficient administration of justice." *Microsoft Corp. v. Baker*, 582 U.S. 23, 36–37 (2017).

Generally speaking, a final decision is one that disposes of all claims and parties in a case. *Adler v. Elk Glenn, LLC*, 758 F.3d 737, 739 (6th Cir. 2014) (per curiam) (Sutton, J., concurring); *see McLish v. Roff*, 141 U.S. 661, 665–66 (1891) (explaining that the final judgment rule aspires "to have the whole case and every matter in controversy in it decided in a single appeal"). All agree that plaintiffs' appeal does not arise from a final judgment in this traditional

sense.  But there are some narrow exceptions to the final judgment rule, one of which is at play here—Federal Rule of Civil Procedure 54(b).  The Rule concerns cases that "present[] more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved."  Fed. R. Civ. P. 54(b).  In those instances, the district court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties," but "only if the court expressly determines that there is no just reason for delay."  *Id.*  In this way, Rule 54(b) addresses the complexities that can attend to the liberal joinder provisions in the Federal Rules by seeking to avoid unnecessary delays in entering final judgment as to claims or parties which are distinct from those remaining before the district court.  *See* 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2654 (4th ed. 2023).  At the same time, this vehicle may not be used as an end run around the final judgment rule.  *See Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 440 (1956) (Frankfurter, J., concurring) (recognizing that Rule 54(b) does not upset the federal prohibition against piecemeal appeals).

A.1.  For certification to be appropriate under Rule 54(b), the district court must have entered final judgment as to at least one claim or party in the case.  *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994).  Plaintiffs contend that the district court's entry of final judgment here was appropriate because the wrongful death cause of action was a distinct claim for purposes of Rule 54(b).  On appeal, we view that conclusion through a de novo lens.  *Lowery v. Fed. Express Corp.*, 426 F.3d 817, 821 (6th Cir. 2005).

As used in Rule 54(b), "'claim' is a term of art."  *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 273 (6th Cir. 2019).  It is "the aggregate of operative facts which give rise to a right enforceable in the courts."  *McIntyre v. First Nat'l Bank of Cincinnati*, 585 F.2d 190, 192 (6th Cir. 1978) (per curiam) (citation omitted).  In that sense, two separate causes of action (say, for example, one for retaliation and one for breach of contract) can amount to one "claim," as that latter term is understood in this setting.  *See Lowery*, 426 F.3d at 821.  So in considering a complaint with multiple causes of action (or counts), we ask whether the district court's judgment resolved a matter that is "distinct" from the remaining causes of action still before the district court.  *See EJS Props., LLC v. City of Toledo*, 689 F.3d 535, 538 (6th Cir. 2012); *Novia Commc'ns, LLC v. Weatherby*, 798 F. App'x 890, 893 (6th Cir. 2020).

Returning to the definition above, adjudicated and unadjudicated causes of action present separate claims when the operative facts underlying the two are distinct. *McIntyre*, 585 F.2d at 192. If not, Rule 54(b) certification is inappropriate.

Assessing whether the dismissed count is different from those remaining before the district court is often "trickier than it sounds." *In re Fifth Third*, 925 F.3d at 273. Start with cases where we have found that Rule 54(b) certification was proper. That was the case, for example, in *Gavitt v. Born*. There, a plaintiff obtained certification to appeal several dismissed due process causes of action following a wrongful conviction (e.g., *Brady* violations against prosecutors and assertions that police officers conducted an incomplete investigation), even though one of the plaintiff's causes of action against a lab technician for the knowing fabrication of test reports survived a motion to dismiss. *Gavitt*, 835 F.3d at 629–30, 635–37. Certification was appropriate because the adjudicated and unadjudicated counts concerned "separate actions taken by different actors with different roles in [plaintiff's] criminal case." *Id*. at 638. The key considerations, again, were the operative facts giving rise to each cause of action. *See also, e.g.*, *GenCorp, Inc. v. Olin Corp*., 390 F.3d 433, 442–43 (6th Cir. 2004) (holding that a cause of action related to hazardous waste disposal raised a distinct claim from a cause of action stemming from an alleged failure to obtain insurance); *In re Fifth Third*, 925 F.3d at 274 (holding that a breach of contract count and a failure to disclose count raised distinct claims because they "stem[med] from different acts or omissions").

Consider next cases on the other side of the ledger. As we have recognized, causes of action do not necessarily address distinct claims merely because they rest on separate legal theories, *McIntyre*, 585 F.2d at 192 (state cause of action for fraudulent conveyance not distinct from federal securities law cause of action), request different forms of relief, *Gen. Acquisition*, 23 F.3d at 1029 (count asserting compensatory damages not distinct from count seeking disgorgement in the context of an attempted hostile takeover), or are pleaded separately, *EJS Props.*, 689 F.3d at 538. So too where causes of action require different elements of proof. *Lowery*, 426 F.3d at 821. Instead, in cases where we have rejected certification, we have done so because the adjudicated and unadjudicated causes of action arose out of the same underlying operative facts. *Id.*

That was the case in *Lowery*. Lowery and his employer settled an internal grievance, with his employer promising not to retaliate against Lowery due to his earlier complaint. *Id.* at 820. Later, after being denied a pay increase, Lowery sued his employer under Title VII for race discrimination and retaliation and under state law for breach of contract in light of his employer's earlier promise. *Id.* The district court granted the employer's motion for summary judgment on the Title VII counts but it denied the motion as to the breach of contract count. *Id.* It then certified the Title VII counts for immediate appellate review under Rule 54. *Id.* On appeal, we concluded that certification was improper. Because the retaliation underlying the Title VII cause of action also formed the basis for the remaining breach of contract cause of action, "both causes of action arose out of the same aggregate of operative facts," meaning the respective causes of action did not reflect distinct claims for Rule 54(b) purposes. *Id.* at 821.

Today's case resembles *Lowery*. Plaintiffs' unadjudicated causes of action for negligence, premises liability, survivorship, and loss of consortium arise from the same acts or omissions as their adjudicated wrongful death cause of action. For each, the same operative facts control: Wal-Mart's alleged negligence in its pellet gun display policy as well as its failure to secure the gun and warn Crawford, leading to his death. *See* Ohio Rev. Code Ann. § 2125.01 (West 2024) (providing for a wrongful death cause of action when "wrongful act, neglect, or default" causes a person's death). The district court entered final judgment on the wrongful death cause of action. Yet the same basic set of facts—Wal-Mart's alleged negligence— underlies plaintiffs' unadjudicated causes of action remaining for trial. In Rule 54(b) parlance, each cause of action arises out of the same claim. Accordingly, Rule 54(b) certification was improper.

A.2. Plaintiffs urge us to view Rule 54(b) certification in a different light. Echoing the district court's decision, they contend their remaining causes of action should be deemed distinct from their adjudicated one because they seek to recover for different injuries. Specifically, they say, the wrongful death cause of action resolved against them seeks to redress injuries to Crawford's beneficiaries caused by his death, while their remaining survivorship cause of action seeks recovery for Crawford's injuries before death. *See Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258, 1261 (Ohio 2007).

To plaintiffs' mind, this result is consistent with *Lowery* and *In re Fifth Third*. But neither one sustains plaintiffs' reading of Rule 54(b). True, *Lowery* noted that the Title VII retaliation and breach of contract causes of action there sought "to recover for the same underlying injury." 426 F.3d at 821. But the motivating force behind the conclusion that these were not distinct claims was the broader point that they "arose out of the same aggregate of operative facts," specifically the retaliation. *Id.* At no point did *Lowery* suggest that causes of action that seek to recover for distinct injuries cannot amount to the same claim when they arise from similar facts.

Conversely, *In re Fifth Third* held that a breach of contract cause of action and a failure to disclose cause of action under the Truth in Lending Act (TILA) were distinct claims under Rule 54(b) because they rested on different operative facts. 925 F.3d at 273–74. In particular, the breach of contract claim stemmed from Fifth Third allegedly charging plaintiffs a higher interest rate than was provided for in a loan agreement, while the TILA claim related to allegations that the bank failed to provide customers with accurate bank statements. *Id.* at 274. To be sure, unlike in *Lowery*, the respective legal theories in *In re Fifth Third* sought to recover damages stemming from separate injuries. *Id.* But as in *Lowery*, *In re Fifth Third* discussed those injuries simply as a means to ascertain the facts underlying each cause of action. The request for monetary damages was evidence that the underlying conduct amounted to breach of contract; statutory damages, on the other hand, showed that separate conduct amounted to a TILA disclosure failure. *See id.* ("While the breach-of-contract [count] focuses on the amount of money that Fifth Third charged plaintiffs, the TILA [count] is based on different conduct: failure to make required disclosures."). Neither case, in short, holds that seeking remedies for different injuries alone justifies deeming two causes of action as distinct claims under Rule 54(b). More broadly, a separate-injury rule like the one plaintiffs advance risks Rule 54(b) swallowing the final judgment rule. After all, it is commonplace for a single set of operative facts to sustain multiple causes of action, each of which can be framed as remedying distinct injuries. *See Wood v. GCC Bend, LLC*, 422 F.3d 873, 879–80 (9th Cir. 2005) (explaining that "it is typical for several claims to be made, based on both state and federal law, and for several theories of adverse treatment to be pursued" stemming "largely from the same set of facts").

Causes of action likewise may amount to the same claim even where the facts underlying the respective causes of action are not perfectly aligned. Plaintiffs are correct that their wrongful death cause of action seeks to recover for the harm suffered by Crawford's family members due to his death, while the survivorship cause of action is tied to Crawford's pain and suffering, and that the facts to prove each will differ. *See Peters*, 873 N.E.2d at 1261. But we do not require a precise factual overlap to find that two causes of action arose out of the same aggregate of operative facts, and thus are not distinct claims. Rather, we look to whether the "differences sufficiently outweigh what they have in common." *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 502 (6th Cir. 2012). Here, where the same alleged negligence on the part of Wal-Mart "[gave] rise to [the] right[s] enforceable in the courts," any differences in plaintiffs' causes of action do not outweigh the similarities. *McIntyre*, 585 F.2d at 192.

B. Alternatively, plaintiffs emphasize the multi-party nature of their suit, noting that Rule 54(b) certification is appropriate where a district court enters final judgment as to "one or more, but fewer than all . . . parties." Fed. R. Civ. P. 54(b). Plaintiffs believe they have satisfied that provision because the district court dismissed Crawford's father and sons entirely from the case. *See Soliday v. Miami County*, 55 F.3d 1158, 1163 (6th Cir. 1995) (holding that there is jurisdiction to review summary judgment granted in favor of two defendants "not involved in any remaining claim" under Rule 54(b)). But that does not seem to be true. The remaining loss of consortium causes of action were brought by Crawford's father and two sons.

Plaintiffs counter that the loss of consortium causes of action "were necessarily dismissed along with the wrongful death" count. To understand why, plaintiffs direct us to Ohio common law, which, they say, instructs that a loss of consortium cause of action cannot seek death-related damages. As a result, plaintiffs believe we must construe the loss of consortium causes of action as requests for damages under the wrongful death count, meaning the consortium counts should have been dismissed along with the wrongful death count. But two points suggest otherwise. One, as pleaded, plaintiffs' consortium counts sought to recover for permanent loss of consortium, which seemingly could include damages incurred by plaintiffs during Crawford's life as well as in death. Two, even were we to read that cause of action as one for wrongful death damages, the fact remains that the district court did not dismiss the loss of consortium

counts and, relatedly, granted Rule 54(b) certification on the wrongful death count only.  As a result, the loss of consortium causes of action are beyond the scope of our review.  Were there any doubt on that score, plaintiffs' motion seeking reconsideration of the summary judgment decision challenged only the dismissal of the wrongful death count, acknowledging that the loss of consortium causes of action were properly before the district court.  It would be an odd turn of events now to allow plaintiffs to argue that their loss of consortium counts functionally were dismissed.  *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022) (explaining that a position is forfeited "when [a] party belatedly asserts it on appeal after having failed to raise it in the district court").

\* \* \* \* \*

We dismiss this appeal for lack of jurisdiction.