RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0247p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

TERRELL ANTHONY HARGROVE,

        *Petitioner-Appellant*,

    *v.*

IAN HEALY, Warden,

        *Respondent-Appellee*.

No. 24-3809

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Youngstown.
No. 4:23-cv-01857—Benita Y. Pearson, District Judge.

Decided and Filed:  September 10, 2025

Before:  MOORE, GRIFFIN, and NALBANDIAN, Circuit Judges

─────────────────

## COUNSEL

**ON BRIEF:**  Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant.  Kimberly L. Lubrani, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

    NALBANDIAN, J., delivered the opinion of the court in which GRIFFIN, J., concurred. MOORE, J. (pp. 9–18), delivered a separate dissenting opinion.

─────────────────

## OPINION

─────────────────

    NALBANDIAN, Circuit Judge.  Terrell Anthony Hargrove appeals the denial of a writ of habeas corpus.  He claims that prison officials unlawfully denied him access to First Step Act time credits.  But Hargrove has already been placed on supervised release.  And because we hold that First Step Act credits cannot be used to reduce a supervised-release term, we dismiss Hargrove's appeal as moot.

**I.**

In 2006, Hargrove was sentenced to 120 months' imprisonment, followed by five years of supervised release for several drug trafficking offenses.  *Hargrove v. Healy*, No. 4:23-CV-1857, 2024 WL 3992261, at *1 (N.D. Ohio Aug. 28, 2024).  He was eventually placed on supervised release, but it was revoked after he committed another drug crime.  *Id.*  When this case arose, he was serving 57 months' imprisonment for his supervised-release violation to run consecutively with his 46-month sentence for heroin distribution, followed by five years of supervised release.  *Id.* at *2.

In 2023, Hargrove petitioned pro se for a writ of habeas corpus under 28 U.S.C. § 2241.  He argued that the Bureau of Prisons (BOP) "refused to permit [him] to earn and apply First Step Act (FSA) earned time credits despite [his] statutory eligibility to do so."  R.1, Pet., p.2, PageID 2.  After the court appointed counsel for Hargrove, the warden, Ian Healy, moved to dismiss.  Healy argued that Hargrove did not exhaust his administrative remedies for his claims and is ineligible to receive First Step Act time credits because one of his convictions is statutorily excluded from the time-credit program.  The district court agreed.  It concluded both that Hargrove failed to exhaust his administrative remedies and that he is ineligible for time credits because he received an aggregate sentence for a disqualifying offense.  Hargrove appealed.  While awaiting review in this court, Hargrove was released from the BOP's custody and began serving his term of supervised release.

**II.**

Before deciding a case on the merits, we must ensure our jurisdiction to do so.  *Sherrod v. Wal-Mart Stores Inc.*, 103 F.4th 410, 412 (6th Cir. 2024).  Under Article III, our jurisdiction "extends . . . only to 'Cases' and 'Controversies.'"  *Brown v. Yost*, 122 F.4th 597, 601 (6th Cir. 2024) (en banc) (per curiam) (quoting U.S. Const. art. III, § 2).  It does not extend to "moot questions or abstract propositions."  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) (internal quotation marks omitted).  To avoid entangling ourselves in such abstractions, we require that there be a "real and substantial controversy," capable of "specific relief," that lasts throughout the entire litigation.  *Id.* (internal quotation marks omitted); *League of Women*

*Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008). So if an intervening event occurs that "make[s] it 'impossible' for the relevant federal court to grant any 'effectual relief,'" the suit is moot, and we have no authority to continue considering it. *Brown*, 122 F.4th at 601 (quoting *Church of Scientology v. United States*, 509 U.S. 9, 12 (1992)).

Healy argues that this case is moot for two reasons. Both are because Hargrove is on supervised release. First, Healy argues that because Hargrove is no longer incarcerated, he is not "in custody" and so cannot bring a habeas claim. *See* 28 U.S.C. § 2255(a). Second, Healy argues that First Step Act time credits cannot reduce Hargrove's term of supervised release. The first argument is meritless. We have consistently found that "individuals subject to supervised release in the federal system[] satisfy the 'in custody' requirement" to bring a habeas claim. *E.g.*, *In re Stansell*, 828 F.3d 412, 416 (6th Cir. 2016).

The second raises an issue of first impression in our court. If, as Hargrove reads the law, First Step Act time credits can be applied to reduce his time on supervised release, a ruling in his favor would mean that he'd be freed from post-release control sooner—*i.e.*, his case is not moot because he can obtain effectual relief. But if, as Healy reads the text, First Step Act time credits can only reduce Hargrove's *incarceration* term, a ruling in Hargrove's favor would not provide effectual relief because he is no longer incarcerated. And his case became moot the moment he entered supervised release. This is the question of statutory interpretation we turn to now.

**A.**

The question here is whether the time credits that Hargrove earned can reduce his supervised-release term. The statute reads: "Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied *toward* time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). Hargrove contends that under this provision, time credits that apply "toward" supervised release reduce the term of the supervised release itself. Healy, on the other hand, argues that the provision means that the time credits reduce the prison term that a prisoner is serving so that the supervised-release term begins sooner. But the credits don't reduce the supervised-release term itself.

We begin with the text's plain meaning and consider the design of the full statute to ensure our interpretation is consistent. *United States v. Jones*, 81 F.4th 591, 597–98 (6th Cir. 2023). Dictionaries offer relevant meanings of "toward" that support each party's position. It can mean "[i]n the direction of," as Healy urges. *Toward*, American Heritage Dictionary of the English Language (5th ed. 2018). Meaning that time credits can be applied to move a prisoner "[i]n the direction of" supervised release. Or it can mean "[i]n furtherance or partial fulfillment of," as Hargrove argues. *Id.* Meaning that time credits can be applied to fulfill a prisoner's supervised-release term.

But just because dictionaries offer multiple definitions for a term does not mean that the term is ambiguous. Here, context guides us to the correct definition. *See Salazar v. Paramount Glob.*, 133 F.4th 642, 650 (6th Cir. 2025) ("[I]t remains 'a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting *West Virginia v. EPA*, 597 U.S. 697, 721 (2022))); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 70 (2012) ("Most common English words have a number of dictionary definitions . . . . One should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise."); *id.* at 167 ("Context is the primary determinant of meaning.").

The context here shows that Healy's interpretation is correct. In the very next sentence, the statute provides: "The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). This consequential provision gives the BOP enforcement authority over the time-credit system, so it makes sense to read the two in tandem. And this sentence says that to carry out the time-credit system, the director "shall transfer eligible prisoners . . . into prerelease custody or supervised release." *Id.* Eligible prisoners are in prison and have completed the relevant prison program. *See id.* § 3624(g)(1) (defining an eligible prisoner as "a prisoner . . . who has earned time credits under the risk and needs assessment system"); *see also id.* § 3635(4) (defining prisoner as a "person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons"); *id.* § 3635(3) (defining the relevant "evidence-based recidivism reduction

programs" as those that "help prisoners succeed in their communities upon release from prison"). The Director then transfers these prisoners either into prerelease custody or supervised release—both of which presume incarceration. So this next sentence doesn't contemplate that the provision would apply to a prisoner who is already on supervised release, like Hargrove, because that person would not need to be transferred to prerelease custody or supervised release. Indeed, it's not even clear that the BOP Director would have anything to do with someone who is already on supervised release. *See id.* § 3624(e) ("A prisoner whose sentence includes a term of supervised release after imprisonment *shall be released by the Bureau of Prisons to the supervision of a probation officer*." (emphasis added)). Nor would someone who is already on supervised release be participating in the relevant program because those programs exist within the prison.

Beyond that, we look to § 3624(g), which the second sentence references. Because the statute calls on the BOP to enforce the time-credit system "as determined under § 3624(g)," *id.*, "[t]he provisions of [§ 3632(d)(4)(c)] should be interpreted in a way that renders them compatible, not contradictory" with § 3624(g). Scalia & Garner, *supra*, at 180 ("harmonious-reading canon"); *see Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). And § 3624(g)(1)(A) defines an "eligible prisoner[]" as one who "has earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." This indicates that a prisoner is eligible for First Step Act benefits when his time credits complete his term of *imprisonment*. *Id.* § 3624(g)(1)(A). This provision also says that if a prisoner is sentenced to supervised release, "the Director of [BOP] may transfer the prisoner to *begin any such term of supervised release at an earlier date*, not to exceed 12 months, based on the application of time credits under section 3632." *Id.* § 3624(g)(3) (emphasis added). So the time credits help a prisoner to *start* his term of supervised release at an earlier date, not *end* his term of supervised release at an earlier date.

When we read the sections together, the BOP implements that time-credit system by allowing a prisoner to "begin [his] term of supervised release at an earlier date" once he "has earned time credits . . . in an amount that is equal to the remainder of [his] term of imprisonment." *Id.* § 3624(g). This language makes clear that when a prisoner earns time

credits "toward" supervised release, he is moving "in the direction" of supervised release; the credits are not in partial fulfillment of his supervised-release term.

Finally, plenty of caselaw supports this conclusion. In *Guerriero v. Miami RRM*, the only other circuit court to consider this issue found it "apparent from the overall statutory language . . . that the time credits would reduce a prisoner's incarceration time—not that the credits would reduce the post-incarceration supervised release." No. 24-10337, 2024 WL 2017730, at *3 (11th Cir. May 7, 2024) (per curiam). And many district courts have come to this conclusion as well. *See Singleton v. Neely*, No. 7:22-CV-00844, 2023 WL 9550049, at *4 (N.D. Ala. Dec. 21, 2023), *report and recommendation adopted*, 2024 WL 476949 (N.D. Ala. Feb. 7, 2024); *Williams v. Fitch*, No. 2:21-CV-549, 2024 WL 737803, at *5 (M.D. Ala. Jan. 31, 2024), *report and recommendation adopted sub nom.*, *Williams v. Cohen*, No. 5:20-cv-2074, 2024 WL 734477 (M.D. Ala. Feb. 22, 2024); *Alexander v. Joseph*, No. 3:22cv23874, 2023 WL 6798866, at *2 (N.D. Fla. Sept. 12, 2023), *report and recommendation adopted*, 2023 WL 6794979 (N.D. Fla. Oct. 13, 2023); *Harrison v. Fed. Bureau of Prisons*, No. 22-14312, 2022 WL 17093441, at *2 (S.D. Fla. Nov. 21, 2022); *United States v. Calabrese*, No. 1:11-cr-00437, 2023 WL 1969753, at *3 (N.D. Ohio Feb. 13, 2023). *But see Dyer v. Fulgam*, No. 1:21-CV-299, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022), *appeal dismissed as moot*, No. 22-5608 (6th Cir. June 6, 2023).

A few district court cases have viewed the statute differently. A handful have concluded that First Step Act credits cannot be applied to a prison term at all, and instead can be applied only to reduce a term of prerelease custody or supervised release. *See United States v. Smith*, 646 F. Supp. 3d 915, 920 (E.D. Mich. 2022); *United States v. Roberts*, No. 2:22-cr-0242, 2024 WL 4762680, at *4 (S.D. Ohio Nov. 13, 2024); *United States v. Morgan*, 657 F. Supp. 3d 976, 981 (E.D. Mich. 2023). As explained, this view is incompatible with § 3632(d)(4)(C)'s command that the BOP enforce the time-credit system "as determined under § 3624(g)." Section 3624(g)(3) expressly allows "the Director of [BOP] [to] *transfer the prisoner to begin any such term of supervised release at an earlier date*, not to exceed 12 months, based on the application of time credits under section 3632." If time credits in § 3632 could be used only to reduce a term of supervised release and not to reduce a term of imprisonment, this language would be contradictory. It is not.

Another court conducted a statutory analysis of the two sentences in § 3632(d)(4)(C) and concluded they address different situations: The first addresses a prisoner in prerelease custody or on supervised release who is using time credits to reduce that term, and the second addresses a prisoner in BOP custody who is using the credits to reduce their term of imprisonment. *Rivera-Perez v. Stover*, 757 F. Supp. 3d 204, 212–13 (D. Conn. 2024). The court reasoned that while the second sentence calls the BOP the relevant actor, the first uses passive voice and so can refer to any agency. *Id.* And the "BOP has no role whatsoever in determining or crediting time in supervised release," so the first sentence must be telling another agency to enact the time-credit system for prisoners on supervised release. *Id.* at 213.

This logic works only if you read each sentence in isolation, but we don't do that. *See United States v. Morton*, 467 U.S. 822, 828 (1984). Start with the title of the provision: "Application of time credits toward prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C); *see Dubin v. United States*, 599 U.S. 110, 121 (2023) (looking to headings to resolve doubt). The title does not imply that it is outlining *two* situations when time credits can be applied—it implies only one. Next, even if the first sentence were directing some undisclosed agency to apply the time credits toward prerelease custody or supervised release, the statute would provide no indication of how that should be done. And that would contrast with the second sentence, which directs the BOP to follow the comprehensive process outlined in § 3624(g). So reading these sentences together, particularly alongside § 3624(g), the more logical reading is that the first sentence outlines what the time-credit system is (a way to move toward prerelease custody or supervised release) and the second sentence outlines how it works (through BOP transfer as determined by § 3624(g)).

The dissent says that our statute is ambiguous. And so it looks to other statutes for clues about its meaning. It settles on 18 U.S.C. § 3624(b)(1) and 18 U.S.C. § 3585(b), concluding that Congress used "toward" in those statutes to mean "in furtherance of"—and that we should do the same here. But these statutes have the same meaning no matter which definition of "toward" we use. *See* 18 U.S.C. § 3624(b)(1) (A prisoner "may receive credit toward the service of the prisoner's sentence . . . ."; "[T]he prisoner shall receive no such credit toward service of the prisoner's sentence . . . ."; "[The BOP] shall consider whether the prisoner . . . is making

satisfactory progress toward earning . . . a high school diploma . . . ."); 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment . . . ."). Because the two definitions of "toward" are interchangeable in these statutes, neither statute is helpful in our case.

Second, the dissent asks which reading would best accomplish Congress's goal of reducing recidivism, citing *United States v. Johnson* to explain the unique value of supervised release. Putting aside whether this is an appropriate consideration, *Johnson*'s actual holding is inconsistent with the dissent's conclusion. In *Johnson*, the Supreme Court refused to alter Johnson's supervised-release term even though he had over-served his prison sentence. *United States v. Johnson*, 529 U.S. 53, 60 (2000). The Court concluded that because "supervised release, unlike incarceration, provides individuals with postconfinement assistance," courts cannot treat "time in prison as interchangeable with [terms] of supervised release." *Id.* In other words, supervised release and incarceration are qualitatively different, which is how today's decision treats them.

For these reasons, we hold that First Step Act time credits under § 3632(d)(4)(C) can be used to reduce a prison term but not a supervised-release term.

**B.**

What does this mean for Hargrove? It means his case is moot. A ruling in his favor—that he is eligible for First Step Act credits—would not change his supervised-release status or remaining time on supervised release. So Hargrove's case is moot because an intervening event (Hargrove's release from BOP custody) makes it impossible for us to grant any effectual relief. *See Brown*, 122 F.4th at 601. For this same reason, we do not address Hargrove's other jurisdictional argument—that he didn't need to exhaust his administrative claim before filing a habeas petition—or the merits of his case.

**III.**

We dismiss the appeal as moot.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting.  Terrell Hargrove, a federal prisoner, has filed a petition for a writ of habeas corpus.  Hargrove sought a writ ordering Respondent, Ian Healy, the warden at Federal Correctional Institution, Elkton, to apply his time credits earned under the First Step Act to transfer him earlier to a term of supervised release and to credit any unused time credits to reduce his supervised-release term.  The majority argues that Hargrove's petition and appeal are moot because credits earned under the First Step Act cannot be used to reduce time spent in supervised release.  I dissent from this holding.

## I.  STATUTORY BACKGROUND

In 2018, Congress enacted the First Step Act.  *First Step Act of 2018*, Pub. L. No. 115-391, 132 Stat. 5194.  The Act implemented a number of prison and sentencing reforms.  *Id.* Among those reforms, the First Step Act "established a system of time credits and provided eligible inmates the opportunity to earn these credits for participating in evidence-based recidivism reduction programming and productive activities." *Valladares v. Ray*, 130 F.4th 74, 79 (4th Cir. 2025) (citing 18 U.S.C. § 3632(d)(4)(A)).

To implement this system, Congress directed the Attorney General to "develop and release publicly on the Department of Justice website a risk and needs assessment system[.]" 18 U.S.C. § 3632(a).  The Attorney General developed the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN tool") to assess "the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism." *Id.* § 3632(a)(1); *see also PATTERN Risk Assessment*, *available at* https://www.bop.gov/inmates/fsa/pattern.jsp.  With the PATTERN tool, the BOP assesses and periodically reassesses "the risk of violent or serious misconduct of each prisoner," assigns and reassigns "evidence-based recidivism reduction programming that is appropriate for each prisoner," and, as relevant to this appeal, "determine[s] when a prisoner is ready to transfer into

prerelease custody or supervised release in accordance with section 3624." 18 U.S.C. § 3632(a)(2)–(7).

Under the First Step Act, eligible prisoners can earn up to ten days of time credits for every thirty days of successful participation in programming. *Id.* § 3632(d)(4)(A)(i)–(ii). If a prisoner maintains a low risk assessment for recidivism, he or she may earn an additional five days of time credits for every thirty days of successful participation. *Id.* Not all prisoners are eligible to receive time credits. Certain convictions enumerated in the First Step Act render a prisoner ineligible to earn time credits. *Id.* § 3632(d)(4)(D).

As indicated by both the text and the header of the First Step Act provision, time credits earned under the Act are applied by the BOP "toward [a prisoner's] time in prerelease custody or supervised release." *Id.* § 3632(d)(4)(C). Furthermore, as part of the system incentivizing low-risk prisoners to participate in evidence-based recidivism-reduction programming, under § 3624(g)(3), "the Director of the [BOP] may transfer [a] prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." *Id.* § 3624(g)(3).

## II. MOOTNESS

I disagree with the majority's position that the First Step Act forecloses the type of relief Hargrove seeks. Section 3632(d)(4)(C), as the provision's title indicates, covers the "**[a]pplication of time credits toward prerelease custody or supervised release.**" Under the First Step Act, time credits "shall be applied *toward* time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). According to the Warden, "toward" means "in the direction of," and so time credits can be applied only to bring a prisoner closer to a term of prerelease custody or supervised release by reducing his or her term of incarceration. Hargrove, on the other hand, argues that "toward" means, essentially, "in furtherance or partial fulfillment of," such that time credits may be applied *against* or to *reduce* a term of supervised release, separate from the term of imprisonment.

Thus, mootness turns on the meaning Congress attached to the word "toward" under § 3632(d)(4)(C). This question is particularly difficult because, as other courts have also noted,

the plain language of § 3632(d)(4)(C) is ambiguous. In resolving this ambiguity, some courts have held that credits may be applied to reduce *either* a term of incarceration *or* supervised release, and others have held that credits may be applied to reduce *only* a term of incarceration.

I believe that basic principles of statutory construction resolve this ambiguity in Hargrove's favor. Although the terms of the First Step Act are ambiguous, Congress, the Supreme Court, and the lower courts have consistently interpreted similar time-credit statutes to mean that credits earned toward a sentence are applied to reduce that sentence. Applying the presumption that Congress intends to use the same meaning of the same word in similar provisions, I would hold that time credits under the First Step Act, "shall be applied" to transfer prisoners at an earlier date to begin a term of prerelease custody or supervised release, and also "shall be applied" to reduce "time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C).

I begin with the key provision of the First Step Act:

> **Application of time credits toward prerelease custody or supervised release.**-- Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody[1] or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C). "Statutory interpretation starts (and customarily ends) with the text of the statute." *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 761 (6th Cir. 2020). "[E]very word and every provision is to be given effect." *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 498 (6th Cir. 2022) (quoting *Nielsen v. Preap*, 586 U.S. 392, 414 (2019)).

The relevant statutory language provides that "[t]ime credits earned . . . by prisoners . . . shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). Focusing on the word "toward," the Warden argues that prisoners cannot use First Step Act time credits to reduce their time on supervised release because, had Congress

---

[1]Types of prerelease custody include home confinement and placement in a residential reentry center. 18 U.S.C. § 3624(g)(2)(A) & (B).

intended this scheme, it would have used the word "*against*." Warden Br. at 11–12 (citing *Toward*, *Black's Law Dictionary* (12th ed. 2024) ("[i]n the direction of, on a course or line leading to (some place or something)")). As another court has noted, the Warden's reading is not so straightforward. "It is not clear from that sentence, read in isolation, whether the time credits are to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release, on the one hand, or, on the other hand, are to be used to reduce the actual time imposed by the original sentence of supervised release[.]" *Guerriero v. Miami RRM*, No. 24-10337, 2024 WL 2017730, at *2 (11th Cir. May 7, 2024) (per curiam).

As the Eleventh Circuit noted, many district courts have adopted the position that time credits may not be used to reduce a term of supervised release but are "to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release." *See id.* at *3 (collecting cases). Other courts have reasoned that applying credits toward supervised release means reducing the term of supervised release. "For example, applying a store credit *toward* the cost of an item means that the cost of that item is reduced by the amount of the credit. Similarly, applying a credit toward one's account balance means that the balance will be reduced by the amount of the credit." *Rivera-Perez v. Stover*, 757 F. Supp. 3d 204, 211–12 (D. Conn. 2024) (emphasis added). By that logic, so too would applying time credits toward supervised release discount or reduce the time spent on supervision. Many courts have adopted this position. *See, e.g.*, *Dyer v. Fulgam*, No. 1:21-CV-299-CLC-CHS, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022), *appeal dismissed as moot*, *Dyer v. Fulgam*, No. 22-5608 (6th Cir. June 6, 2023); *United States v. Smith*, 646 F. Supp. 3d 915, 920 (E.D. Mich. 2022); *United States v. Roberts*, No. 2:22-cr-0242, 2024 WL 4762680, at *4 (S.D. Ohio Nov. 13, 2024); *Cook v. Hemingway*, No. 21-cv-11711, 2022 WL 3568571, at *4 (E.D. Mich. Aug. 18, 2022); *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *6 (E.D. Cal. Mar. 10, 2025) (the Government arguing that the First Step Act gives BOP authority to reduce time spent on supervised release); *Cohen v. United States*, No. 20-CV-10833 (JGK), 2021 WL 1549917, at *4 (S.D.N.Y. Apr. 20, 2021). Some courts have gone even further, holding that time credits "apply to only 'prerelease custody or supervised release,' *not* to a term of imprisonment." *United States v. Morgan*, 657 F. Supp. 3d 976, 981 (E.D. Mich. 2023); *see also Smith*, 646 F. Supp. 3d at 920; *Roberts*, 2024 WL 4762680, at *4.

Dictionaries published around the time of the passage of the First Step Act confirm the ambiguity identified by the Eleventh Circuit and exemplified by the dozens of district courts that have taken opposing positions. Dictionaries define "toward" to mean both "[i]n the direction of," as urged by the Warden, and "[i]n furtherance or partial fulfillment of," as urged by Hargrove. *Toward*, *The American Heritage Dictionary of the English Language* (5th ed. 2018); *see also Toward*, *Webster's New World College Dictionary* (5th ed. 2020). If Congress intended to use "toward" in the sense of "in the direction of," then time credits applied toward time in supervised release would move a prisoner closer in the direction of prerelease custody or supervised release. This would confirm the Warden's reading: time credits reduce a term of incarceration but not time in prerelease custody or supervised release. If, on the other hand, Congress intended to use "toward" in the sense of "in furtherance or partial fulfillment of," then time credits applied toward time in prerelease custody or supervised release would reduce those sentences. This would confirm Hargrove's reading: time credits reduce a term of prerelease custody or supervised release.

There are no persuasive reasons on the face of the statute to favor one interpretation over the other. Read in isolation, § 3632(d)(4)(C) does not on its own resolve this ambiguity. Reading other uses of "toward" in the sentencing-credit context does, however, firmly resolve this ambiguity in Hargrove's favor. *See Azar v. Allina Health Servs.*, 587 U.S. 566, 574 (2019) ("[The] [Supreme] Court does not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes." (citing *Law v. Siegel*, 571 U.S. 415, 422 (2014))). In these other instances, courts, most notably the Supreme Court, have interpreted the word "toward" in the sentencing-credit context to mean that the credit should *reduce* or count *against* the prisoner's sentence. This supports reading the First Step Act as Hargrove urges.

For instance, in 18 U.S.C. § 3585(b), Congress used the word "toward" to describe giving "[a] defendant . . . credit *toward* the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences." *Id.* (emphasis added). As our own court has noted, "toward" in § 3585(b) means that "[a] federal defendant has the right to receive credit for time served in official detention before his sentence begins." *Gilbert v. United States*, 64 F.4th 763, 772 n.4 (6th Cir. 2023). It would make sense—and also follow the Court's

instructions to attach the same meaning to the same term in related statutes—to interpret the use of "toward" in § 3632(d)(4)(C) to mean credit *against* or to *reduce* time in prerelease custody or supervised release.

Moreover, the Supreme Court has used similar language when discussing the meaning of "toward" in 18 U.S.C. § 3585(b). "Title 18 U.S.C. § 3585 determines when a federal sentence of imprisonment commences and whether credit *against* that sentence must be granted for time spent in 'official detention' before the sentence began." *Reno v. Koray*, 515 U.S. 50, 55 (1995) (emphasis added). Thus, the Court has endorsed reading "toward" as "against" when interpreting a sentencing-credit statue. And so too has the Court noted that "§ 3585(b) *reduces* a defendant's 'imprisonment' by the amount of time spent in 'official detention' before his sentence[.]" *Id.* at 59. In other words, using "toward" in a sentencing statute has the practical effect of "reducing" a prisoner's sentence.

The same is true with respect to 18 U.S.C. § 3624(b). Section 3624(b)(1) allows prisoners to "receive credit *toward* the service of the prisoner's sentence[.]" *Id.* (emphasis added). And, as the Supreme Court has stated, this "permits federal prison authorities to award prisoners credit *against* prison time as a reward for good behavior." *Barber v. Thomas*, 560 U.S. 474, 476 (2010) (emphasis added). Moreover, as the Court has noted, the Sentencing Commission has recognized that "toward" in § 3624(b) means "for reducing" time spent serving a sentence. *Pepper v. United States*, 562 U.S. 476, 501 (2011) (quoting the commentary to U.S.S.G. § 5K2.19). Thus, just as with § 3585(b), courts have interpreted "toward" in § 3624(b) as synonymous with "against," and having the practical effect of "to reduce." The consistency of interpretation across the two statutes strongly favors Hargrove's interpretation.

But these are not the only occasions in which the Supreme Court has used "toward," "against," and "reduce" interchangeably when discussing sentencing credits. *See Mont v. United States*, 587 U.S. 514, 521–22, 524 (2019). In *Mont*, the Supreme Court addressed the scope of § 3624(e)'s provision "for tolling when a person 'is imprisoned in connection with a conviction.'" *Id.* at 521 (quoting 18 U.S.C. § 3624(e)). According to the Court, "[t]his phrase, sensibly read, includes pretrial detention credited *toward* another sentence for a new conviction." *Id.* (emphasis added). In its discussion of the sentencing-credit provision, the Court oscillated

between saying credit "toward" and credit "against" a sentence. For instance, the Court held that "the phrase 'in connection with a conviction' encompasses a period of pretrial detention for which a defendant receives credit *against* the sentence ultimately imposed." *Id.* (quoting 18 U.S.C. § 3624(e)). The Court then switched back and forth again between "toward" and "against." *Id.* at 522 ("credited *toward* the new sentence" and "crediting the pretrial detention that Mont served while awaiting trial and sentencing for his crimes *against* his ultimate sentence" (emphasis added)). Indeed, on three more occasions in *Mont*, the Supreme Court uses "toward" to mean that a sentencing credit reduces a term of incarceration. *Id.* at 524 ("Permitting a period of probation or parole to count *toward* supervised release but excluding a period of incarceration furthers the statutory design of 'successful[ly] transition[ing]' a defendant from 'prison to liberty.' Allowing pretrial detention credited *toward* another sentence to toll the period of supervised release is consistent with that design." (emphasis added) (alterations in original) (quoting *Johnson v. United States*, 529 U.S. 694, 708–09 (2000))).

Thus, on at least three separate occasions, the Supreme Court has noted that "toward" means "against," and thereby having the practical effect of "reducing" a sentence. Significantly, that is three separate occasions involving two separate statutes. This consistency is notable. In the face of these precedents, it is hardly unusual to interpret the word "toward" as synonymous with "against," and having the practical effect of "to reduce," when interpreting a sentencing-credit statute. I see no reason to adopt a position different from that of the Court when interpreting the meaning of "toward" as it is used in § 3632(d)(4)(C).

The Supreme Court's consistent and repeated interpretation of "toward" as synonymous with "against" and meaning "to reduce" in the sentencing-credit statutes strongly counsels in favor of doing the same here. Adopting this interpretation also makes sense in the First Step Act's framework. As described by the court *Rivera-Perez*, the first sentence of § 3632(d)(4)(C) makes time credits available to reduce an incarcerated person's time in prerelease custody or supervised release. 757 F. Supp. 3d at 212–13. Then, the second sentence provides the BOP the authority to transfer eligible prisoners to prerelease custody or supervised release up to a year earlier than scheduled. *Id.* That the BOP is invoked only in the second sentence is not superfluous. "Once a federal inmate is released from BOP custody to begin supervision by

Probation, the BOP has no further authority over that inmate." *Id.* at 213. "Consistent with that reality, the first sentence of section 3632(d)(4)(C), unlike the second, is not directed at the BOP, but rather uses passive voice: 'Time credits . . . *shall be applied* toward time in prerelease custody or supervised release." *Id.* (emphasis and alteration in original) (quoting 18 U.S.C. § 3632(d)(4)(C)). Under this interpretation, full meaning is given to § 3632(d)(4)(C).

Nor am I persuaded to depart from this holding based on how other courts have interpreted the first sentence of § 3632(d)(4)(C) in contrast to the second sentence. The second sentence does not shed meaningful clarity on this issue. I am not convinced to apply a different meaning for "toward" under the First Step Act given the precedents establishing that "toward" is synonymous with "against," and has the practical of effect of "reducing" a sentence. In my estimation, the second sentence only confirms the ambiguity that "toward" in § 3632(d)(4)(C) can reasonably mean either "in the direction of" or "in furtherance or partial fulfillment of" prerelease custody or supervised release. The second sentence reads as follows: "The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." There are two persuasive readings of this sentence that point towards opposing results. First, in the Warden's favor, "the second sentence clearly indicates that Congress meant that the time credits are to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release[.]" *Guerriero*, 2024 WL 2017730, at *2.

But this is not the only way to read this language. "Reading the second sentence as merely confirming the meaning of the first, however, would render the second sentence entirely superfluous." *Rivera-Perez*, 757 F. Supp. 3d at 212 (citing *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988) ("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.")). To avoid rendering the second sentence superfluous, the first sentence of § 3632(d)(4)(C) could be read to "allow[] credits to be applied to reduce a term of (i.e., 'time in') prerelease custody or supervised release[.]" *Id.* In this reading, the second sentence is not rendered superfluous because it "allows the BOP to apply credits to transfer an inmate to prerelease custody or to supervised at an earlier date." *Id.* The first sentence allows time credits

to be applied toward reducing time in prerelease custody or supervised release, whereas the second sentence grants the BOP the authority to transfer eligible inmates into prerelease custody or supervised release at an earlier time.

My interpretation of "toward" is also supported by and consistent with the rationale animating the time-credits system. With the First Step Act, Congress aimed to "enhance public safety by improving the effectiveness and efficiency of the Federal prison system with offender risk and needs assessment, individual risk reduction incentives and rewards, and risk and recidivism reduction." H.R. Rep. No. 115-699, at 22 (2018). As part of that incentive structure, the First Step Act provides time credits for low-risk inmates who participate in evidenced-based recidivism-reduction programming or productive activities. Evidenced-based recidivism-reduction programming means either a group or individual activity that "has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism [and] is designed to help prisoners succeed in their communities upon release from prison[.]" 18 U.S.C. § 3635(3)(A) & (B).

The purpose of the time-credit system is to promote rehabilitation and efficiency in the federal penal system by incentivizing inmates to participate in recidivism-reducing programming while in prison. *See id.* The First Step Act was designed with "the most modern social science evaluation tools to find out who is at low risk of reoffending." 164 Cong. Rec. S7642 (daily ed. Dec. 17, 2018) (statement of Sen. Cornyn). In doing so, the First Step Act "allows prisons to help criminals transform their lives, if they are willing to take the steps and responsibility to do so, so that we are not perpetuating the cycle of crime . . . ." *Id.* Reading § 3632(d)(4)(C) in favor of the Warden would inhibit these aims. The Warden's position perversely encourages prisoners to participate in as little programming as is necessary to achieve early release, but no more than that. *See* 18 U.S.C. § 3624(g)(3). It thereby does not encourage meaningful participation in programming that Congress intended would most benefit low-risk prisoners. Nor does the Warden's reading promote maximizing participation in evidence-based programing proven to reduce recidivism.

Hargrove's reading, on the other hand, encourages prisoners to engage in as much programming as possible to achieve the rehabilitative ends promoted by supervised release, but

while still incarcerated.  *See United States v. Johnson*, 529 U.S. 53, 59 (2000) (discussing the unique rehabilitative ends in the context of supervised release).  By incentivizing prisoners to engage in programming while incarcerated, the First Step Act streamlines the rehabilitative process.  As the Court has noted, "Congress intended supervised release to assist individuals in their transition to community life.  Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."  *Id.*  "[T]he primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release."  *Id.* (first alteration added) (quoting S. Rep. No. 98–225, at 124 (1983)).  Congress's decision through the First Step Act to promote rehabilitation while incarcerated via the time-credit system and the PATTERN tool supports these aims.  Congress has the authority to craft these types of incentives, and the courts must enforce the text that Congress has enacted.

Reading § 3632(d)(4)(C) as reducing a term of prerelease custody or supervised release comports with Congress's goal with the First Step Act of promoting community safety and a prisoner's transition into the community.  *See* 18 U.S.C. § 3635.  Congress was clear about this.  "The data indicates that unless the government acts to reduce the recidivism rate among federal inmates, there is a strong possibility that former prisoners will recidivate and be rearrested or end up re-incarcerated.  Not only is it in the fiscal interest of the government to reduce recidivism, it is in the public safety interest as well."  H.R. Rep. 115-699, at 22 (2018).  The First Step Act was intended to rework the federal system to address the needs and improve the success of prisoners once they return to the community.  *Id.*  Encouraging inmates to do the bare minimum in programming, and possibly even turn down programming assigned for their benefit under the PATTERN tool once they reach the minimum credits needed for early release, would run counter to the very heart of the First Step Act.  On the other hand, encouraging inmates to rehabilitate while incarcerated and to prepare them for successful supervised release would promote the ends of the Act.

For these reasons, I respectfully dissent.